IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID SULLIVAN, | ) | CASE NO. 3:13CV00701 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL, | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff David F. Sullivan ("Plaintiff" or "Sullivan") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for supplemental social security income ("SSI").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

As discussed below, the ALJ's stated reason for discounting consultative examiner Dr. Comley's opinion, that Sullivan is markedly impaired in several work-related mental health functions, was inadequate because it was based on the opinions of state agency consultant who rendered their opinions before Sullivan began any treatment for his mental health issues.  Accordingly, the Commissioner's decision should be **REVERSED AND REMANDED.**

## I.  Procedural History

Sullivan protectively filed[1] an application for SSI on December 2, 2009, alleging a disability onset date of December 2, 2009.  Tr. 132.  He alleged disability based on coronary artery disease, herniated disc with severe stenosis, nerve damage to left foot and right leg, social phobia, and depression.  Tr. 147.  Sullivan's application was denied by the state agency initially and on reconsideration (Tr. 78-79).  On November 3, 2011, a hearing was held before Administrative Law Judge ("ALJ") Barbara Sheehe.  Tr. 43-77.

In her November 21, 2011, decision, the ALJ determined that Sullivan's residual functional capacity ("RFC") did not prevent him from performing work existing in significant numbers in the national economy, i.e., he was not disabled.  Tr. 9-24.  Sullivan requested review of the ALJ's decision by the Appeals Council. Tr. 7-8.  On March 13, 2013, the Appeals Council denied Sullivan's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-4.

## II. Evidence

### A.  Personal and Vocational Evidence

Sullivan was born in 1968 and was 43 at the time of the ALJ's 2011 hearing.  Tr. 50, 123. Sullivan completed high school.  Tr. 50.  Sullivan last worked in 1997 as an industrial cleaner.  Tr. 51.

---

[1] Protective filing is a Social Security term for the first time you contact the Social Security Administration to file a claim for disability or retirement. Protective filing dates may allow an individual to have an earlier application date than the actual signed application date. This is imp ortant because protective filing often affects the entitlement date for disability and retirement beneficiaries along with their dependents.
http://www.ssdrc.com/disabilityquestionsmain20.html (Last visited 3/05/14).

**B. Medical Evidence[2]**

On July 31, 2009, Sullivan presented to the Emergency Room of Akron General Health Systems complaining of tingling and numbness. Tr. 466. Sullivan's blood pressure was elevated and he was diagnosed with anxiety. Tr. 466-67.

On February 20, 2010, Sullivan underwent a psychological consultative exam by James F. Sunbury, Ph.D., at the request of the Social Security Administration. Tr. 394-397. Dr. Sunbury stated that Sullivan had not been hospitalized for psychiatric care and had not had mental health counseling. Tr. 395. Sullivan reported to Dr. Sunbury that he had been taking the antidepressant Lexapro for nine or ten months and that it was helping with his depression. Id. Dr. Sunbury noted that Sullivan denied experiencing full panic attacks. Tr. 396. Dr. Sunbury diagnosed Sullivan with Depressive Disorder Not Otherwise Specified and Dependent Personality Disorder. Tr. 397. Dr. Sunbury opined that Sullivan was not impaired in his ability to relate to others, understand, remember, and follow instructions, and maintain attention, concentration, persistence, and pace. Id. Dr. Sunbury further opined that Sullivan was mildly impaired in his ability to withstand the stress and pressures of day to day work due to his chronic anxiety and depressed mood. Id.

Suzanne Castro, Psy.D., a state agency reviewing physician, completed a Psychiatric Review Technique dated February 24, 2010. Tr. 398-411. Dr. Castro noted that Sullivan did not have a current psychiatric treating source but was prescribed psychotropic medications by his primary care physician. Tr. 410. Dr. Castro opined that Sullivan's mental health impairments were not severe since he was no more than mildly impaired in all work-related mental abilities. Id.

---

[2] Plaintiff only challenges the ALJ's findings with respect to his mental health impairments. Accordingly, only the medical evidence relating to those claims is summarized herein.

On June 30, 2010, state agency reviewing physician Melanie Bergsten, Ph.D. affirmed the opinion of Dr. Castro, opining that Sullivan's mental impairments imposed no more than mild limitations to his work-related mental abilities.  Tr. 439

On January 7, 2011, Sullivan began treatment for his mental health care at the Counseling Center of Wayne and Holmes Counties ("CCWHC").  Tr. 682.  Sullivan continued to obtain treatment and medication management from CCWHC through September 7, 2011.  Tr. 661-83.  On January 7, 2011, Sullivan underwent counseling with Jennifer Combs, M.A., P.C.  Tr. 682.  Ms. Combs found Sullivan mildly depressed and moderately anxious.  Id.  On January 13, 2011, Sullivan was evaluated by Vera Astreika, M.D., who diagnosed him with Depressive Disorder and Anxiety Disorder and recommended Sullivan continue counseling.  Tr. 680.  Dr. Astreika also increased Sullivan's Prozac and prescribed Xanax.  Id.  On January 17, 2011, Sullivan returned to Ms. Combs who found him moderately depressed and moderately anxious.  Tr. 679.  On January 27, 2011, Sullivan presented to Dr. Astreika reporting that he did not feel better after increasing Prozac.  Tr. 677.  Dr. Astreika discontinued Prozac and started Sullivan on Cymbalta.  Id.  On February 15, 2011, Sullivan reported to Dr. Astreika that he had increased palpitations and had stopped taking Cymbalta.  Tr. 674.  Dr. Astreika started Sullivan on Zoloft.  Id.  On March 15, 2011, Dr. Astreika increased Zoloft as Sullivan reported he was feeling "the same" since being put on the medication.  Tr. 672.  On April 22, 2011, Sullivan returned to Dr. Astreika and reported that he was feeling better since his last visit.  Tr. 669.  On June 17, 2011, and September 7, 2011, Sullivan reported to Dr. Astreika that he was feeling good.  Tr. 664.

On September 4, 2011, Sullivan underwent a psychological consultative exam by John A. Comley, Psy.D. at the request of the Social Security Administration.  Tr. 700-04.  Dr.

4

Comley found Sullivan to be anxious and depressed.  Tr. 702.  Dr. Comley opined that
Sullivan is markedly limited in his ability (a) to complete a normal workday and workweek
without interruptions from psychologically based symptoms and to perform at a consistent
pace without an unreasonable number and length of rest periods; (b) to accept instructions
and respond appropriately to criticism from supervisors; and (c) to get along with coworkers
or peers without distracting them or exhibiting behavioral extremes.  Tr. 705.

## C.  Testimonial Evidence

### 1.      Sullivan's Testimony

At the administrative hearing, Sullivan was represented by counsel and testified that he
previously worked as a hydroblaster and vac operator for an industrial cleaning company.  Tr.
51.  He further testified that he stopped working in 1997 due to chest trouble.  Id.  Sullivan
testified that he feels he is currently unable to work due to "constant angina and associated with
that…back problem (sic) and, between the two of them, I'm not getting much rest."  Tr. 52.
With regard to his mental health problems, Sullivan testified that he is depressed and takes
Xanax and Zoloft.  Tr. 60.  Sullivan stated that the medications haven't really made a difference
in how he's feeling.  Id.  With regard to daily activities, Sullivan testified that he reads, helps
around the house, watches some television, mows the lawn, sometimes goes shopping, and
drives five or six times a week.  Tr. 62-67.

### 2.      Vocational Expert's Testimony

Vocational Expert Mary Beth Kopar ("VE") testified at the hearing.  Tr. 71-76.  The VE
testified that Sullivan's past relevant work as an industrial cleaner was unskilled and performed
at a heavy to very heavy exertional level.  Tr. 71.  The ALJ then asked the VE to consider a
hypothetical individual of Sullivan's age, education, and work experience; who can lift and carry

five pounds frequently and ten pounds occasionally; can sit six hours during an eight-hour day; can stand and walk two hours during an eight-hour day; must be allowed a sit/stand option; would be off-task only a minute or two to change positions; should only be required to perform tasks with repetitive foot movements occasionally or no more than one-third of the day; who can perform no more than occasional bending; may never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; who should avoid all exposure to workplace hazards such as unprotected heights or dangerous machinery; and who should avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas.  Tr. 72.  The VE testified that such a hypothetical individual could not perform Sullivan's past relevant work.  Tr. 73. However, the VE testified that such an individual could perform work as an order clerk (300,000 positions nationally, 13,000 positions locally/regionally), a ticket checker (100,000 positions nationally, 1,000 positions locally/regionally), and as an addresser (50,000 positions nationally, 250 positions locally/regionally).  Tr. 73.

The ALJ then asked the VE to consider a second hypothetical with the following variations from the first: instead of avoiding concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas, the hypothetical individual would avoid even moderate exposure to the foregoing.  Tr. 73.  The ALJ further stated that the hypothetical individual could work in an office atmosphere but not an atmosphere more polluted than that.  Id.  The ALJ also stated that the individual should avoid concentrated exposure to extremes of heat and cold.  Id.  The VE testified that the same positions (order clerk, ticket checker, addresser) could be performed by the second hypothetical individual.  Tr. 74.

The ALJ then posed a third hypothetical to the VE.  Tr. 74.  The ALJ added to the limitations posed in the second hypothetical that the individual would be limited to low-stress

6

tasks precluding: high-production quotas, such as piece work or assembly line work, strict time requirements, arbitration, negotiation, confrontation, and directing the work of others or being responsible for the safety of others. Id. The VE testified that the same positions were available to this third hypothetical individual. Id.

The ALJ then asked whether there would be any jobs for the hypothetical individual if the individual were off-task twenty percent of the time or more or would miss two or more days of work per month. Tr. 74. The VE replied there would not be any jobs for such an individual with either of the additional limitations. Id.

### III. Standard for Disability

#### A. Initial Disability Determination

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making an initial determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1.      If the claimant is doing substantial gainful activity, he is not disabled.

2.      If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.      If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.      If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.      If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy.  *Id.*

### IV. The ALJ's Decision

In her November 21, 2011, decision, the ALJ made the following findings:

1.      The claimant has not engaged in substantial gainful activity since December 11, 2009, the application date.  Tr. 14.

2.      The claimant has the following severe impairments:  cardiac arrhythmias, coronary artery disease status post stent insertion, hypertension, obesity, gastro-esophageal reflux disease, obstructive sleep apnea, right femoral arterio-venous fistula status post-surgical repair, degenerative disc disease of the lumbar spine with herniated discs at L4-5 and L5/S1, spinal

8

stenosis, lumbosacral spondylosis, sciatica, and cervical disc protrusion at the C4-5 and C6-7 joints.  Tr. 14.

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).  Tr. 16.

4.    The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant must be afforded the option to sit or stand at will, for comfort; the claimant may occasionally engage in repetitive foot movements, may occasionally bend, crawl, crouch, kneel, and stoop, but may never climb ladders, ropes or scaffolds; the claimant must avoid concentrated exposure to extremes of heat or cold, must avoid even moderate exposure to pulmonary irritants, such as dust, gases, odors, fumes and poorly ventilated areas and must avoid all exposure to workplace hazards, such as unprotected heights or dangerous moving machinery.  Tr. 16.

5.    The claimant is unable to perform any past relevant work.  Tr. 22.

6.    The claimant was born in 1968 and was 41 years old, which is defined as a younger individual age 18-44, on the date the application was filed.  Tr. 23.

7.    The claimant has at least a high school education and is able to communicate in English.  Tr. 23.

8.    Transferability of job skills is not an issue in this case because claimant's past relevant work is unskilled.  Tr. 26.

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.  Tr. 23.

10.   The claimant has not been under a disability, as defined in the Social Security Act, since December 11, 2009, the date the application was filed.  Tr. 24.

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals

Council declined review on March 13, 2013.  Tr. 6.

## V. Parties' Arguments

### A.      Plaintiff's Arguments

Sullivan presents one issue for review.  He argues that the ALJ improperly failed to include mental limitations in her RFC finding.  Doc. 12, p. 13.  More specifically, Sullivan argues that the ALJ failed to properly evaluate opinion evidence from Dr. Comley and failed to analyze treating notes and opinions.  Doc. 12, p. 18.

### B.      Defendant's Arguments

In response, the Commissioner argues that substantial evidence supports the ALJ's decision that Sullivan was not disabled.  Doc 13, p. 1.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted)).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.  The ALJ's stated reason for discounting Dr. Comley's opinion is not supported by substantial evidence.**

Sullivan argues that the ALJ's RFC determination is not supported by substantial evidence because it failed to account for his mental impairments.  Doc. 12, p. 14.  Sullivan contends that the ALJ's reliance on the opinions of state agency consultants Dr. Bergsten and Dr. Castro and consultative examiner Dr. Sunbury does not constitute substantial evidence to support the ALJ's decision because, after these opinions were rendered, Sullivan received mental health treatment and a consultative exam by Dr. Comley which Sullivan contends support mental health limitations.  Id. at 14-16.

The responsibility for determining a claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546(c). "[T]he adjudicator's assessment of an individual's RFC may be the most critical finding contributing to the final determination or decision about disability." SSR No. 96-5p, 1996 SSR LEXIS 2, *14 (July 2, 1996). An RFC assessment is "based on consideration of all relevant evidence in the case record, including . . . evidence, such as observations of lay witnesses . . ." *Id.* at * 12. While an ALJ is not required to incorporate all such evidence into the RFC, an ALJ is required to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR No. 96-8p, 1996 SSR LEXIS 5, * 19 (July 2, 1996).

At Step Two, the ALJ determined that Sullivan's medically determinable mental health impairments of Depressive Disorder, Anxiety Disorder, and Dependent Personality Disorder  are not severe because the ALJ found only mild limitations in Sullivan's activities of daily living; social functioning; concentration, persistence, or pace; and found that Sullivan experienced no episodes of decompensation.  Tr. 15.  The ALJ, however, determined that Sullivan had various physical severe impairments.  Tr. 14 .  Once one severe impairment is found at Step Two, the

11

combined effect of all impairments must be considered, even those that are not severe, in determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1523, 404.1545(a)(2).

In contrast to her detailed credibility analysis with respect to Sullivan's alleged physical health impairments (Tr. 17-20), the ALJ made no credibility analysis as to Sullivan's claims of mental health impairments.[3] Rather, the ALJ limited her consideration of Sullivan's mental health impairments to a discussion of the opinion evidence. Tr. 22.

As for the opinion evidence relating to Sullivan's mental health impairments, the ALJ accorded significant weight to the opinions of state agency reviewing physicians Drs. Bergsten and Castro who opined that Sullivan had no severe mental impairments. Tr. 22. The ALJ accorded considerable weight to the opinion of consultative examiner, Dr. Sunbury, who found Sullivan mildly impaired in his ability to withstand stressors of day-to-day work, but opined that Sullivan was unimpaired in his other work-related abilities. The ALJ accorded little weight to the other consultative examiner, Dr. Comley, who opined that Sullivan is markedly limited in his ability (a) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (b) to accept instructions and respond appropriately to criticism from supervisors; and (c) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 705.

The ALJ stated that he discounted the opinion of Dr. Comley because it "was inconsistent with others of record, such as those of the state agency medical consultants [Dr. Bergsten and Dr. Castro] and consultative psychological examiner [Dr. Sunbury]…" Tr. 22. However, the

---

[3] The ALJ's analysis thus failed to comply with regulations requiring the ALJ to follow a two-step process to determine (1) whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce claimant's pain or other symptoms and (2) once an underlying physical or mental impairment that could reasonably be excepted to produce claimant's pain or other symptoms has been shown, to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. 20 C.F.R. § 416.929, SSR 96-7p, Tr. 17.

opinions of Drs. Bergsten, Castro, and Sunbury were rendered in 2010 prior to Sullivan receiving any mental health treatment.  Tr. 407-410, 439.  In January 2011 through September 2011, Sullivan treated at the Counseling Center of Wayne and Holmes County for his mental health impairments.  Tr. 660-684.  Prior to that time there were no mental health treatment records for Sullivan.  Because the ALJ used the pre-treatment opinions of Drs. Bergsten, Castro, and Sunbury as her basis for discounting Dr. Comley's post-treatment opinion, the ALJ's discounting of Dr. Comley's opinion is not supported by substantial evidence.  There may exist in the record other evidence to discount Dr. Comley's opinion; however, the ALJ's stated reason is not supported by substantial evidence.

Moreover, the ALJ's discounting of Dr. Comley's opinion based on the opinions of Drs. Bergsten and Castro is even more problematic when considered in combination with the fact that the ALJ stated that she assigned significant weight to the opinions of Drs. Bergsten and Castro in part because "each had the opportunity to review the claimant's records."  Tr. 22.  That statement is not accurate.  Drs. Bergsten and Castro did not have the opportunity to review any of Sullivan's mental health treatment records because their opinions were rendered prior to Sullivan obtaining treatment.

Based on all of the above, the ALJ's discounting of Dr. Comley's opinion as to Sullivan's mental health impairments is not supported by substantial evidence because the ALJ gave an inadequate explanation for discounting Dr. Comley's opinion.  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787-88 (6th Cir. 2009).   Accordingly, this Court is unable to determine if the ALJ's failure to include mental health limitations in the RFC is supported by substantial evidence.[4]  "Where the ALJ's decision lacks evidentiary support or is so poorly articulated as to

_____

[4] The Commissioner argues that the record shows that Sullivan did not engage in any mental health treatment at the time of his SSI application, Sullivan's treating specialist diagnosed major depressive disorder but consistently noted

prevent meaningful review, the case must be remanded." *Castello v. Commissioner of Social Sec.*, 5:09 CV 2569, 2011 WL 610590, at \*2 (N.D. Ohio Jan 10, 2011) *(quoting Giles v. Astrue,* 483 F.3d 483, 486 (7th Cir. 2007) (internal quotation omitted); *Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir.1995) (the ALJ's analysis must allow reviewing court to trace the path of his reasoning). While the Court does not require a perfect opinion, it does ask for a logically consistent one. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).

The Commissioner argues that the ALJ limited Sullivan to "low stress" sedentary work "[giving] Sullivan the benefit of the doubt and account[ing] for any potential limitations resulting from those impairments in her decision."  Doc. 13, pp. 14-14.  However, the Commissioner is incorrect.  The ALJ did not include any "low stress" limitation in her RFC.  See Tr. 16.  The ALJ, however, did present a hypothetical to the VE which include all of Sullivan's physical impairments as well as a limitation of "low stress tasks," which the ALJ defined as "precluding high production quotas, such as piece work or assembly line work, strict time requirements, arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety of others."  Tr. 74.  The VE testified that an individual with such limitations could perform

---

that mental status findings were good, and that Dr. Comley qualified his opinion by stating that the state agency should only consider Sullivan psychologically disabled if Sullivan's medical problems were physically disabling and primary.  Doc. 13, p. 16.  However, the ALJ decision does not suggest that any of this evidence was used to discount Dr. Comley's opinion or to support the RFC determination.

work as an order clerk, ticket checker, and addresser.  Tr. 73-74.  Accordingly, it appears that the Commissioner is arguing that a remand would be pointless because the record shows that, even with a "low stress" limitation as defined by the ALJ in the revised hypothetical, Sullivan would not be precluded from performing work.

It is true that courts are not required to remand where it "would be an idle and useless formality." (*Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir.2004) quoting *NLRB v. Wyman,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)).  However, remanding this case is not a mere formality, since it "would propel [the Court] into the domain which Congress has set aside exclusively for the administrative agency," if the Court were to determine the jobs available to Sullivan based upon limitations not included in the RFC determined by the ALJ in her decision. *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); *see also Williams v. Comm'r of Soc. Sec.,* 227 Fed.Appx. 463, 464 (6th Cir.2007). For example, the ALJ also posed hypotheticals to the VE concerning an individual who would be abe off-task twenty percent of the time or who would miss two or more days of work per month.  Tr. 74.  The VE testified that there would be no work for an individual with either of those limitations in addition to the physical limitations previously stated.  Tr. 74.  It is not possible for this Court to determine what limitations would apply if the ALJ credited Dr. Comley's opinion or what effect additional limitations would have on jobs available.  Instead, the ALJ must make that determination. Where an "administrative agency alone is authorized to make" a particular determination, the reviewing court "must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Chenery,* 332 U.S. at 196, 67 S.Ct. 1575. This Court should therefore

remand this case for reconsideration.  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009)

### B.  Award of Benefits Not Warranted

Sullivan argues that this Court should not remand but should reverse the Commissioner's decision and award benefits. The Court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir.1994). Otherwise, the court should remand to the Commissioner for further consideration. *White*, 312 F. App'x at 790.  The record does not adequately establish Sullivan's entitlement to benefits.  Accordingly, remand, not reversal, is appropriate.

### VII.  Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be **REVERSED and REMANDED**.[5]

Dated:  March 24, 2014

_____
Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[5] The recommendation to remand is not a determination by the undersigned that Sullivan is disabled during any of the relevant time periods.